Case 1:21-cv-00798-PKC-VMS   Document 1-3   Filed 02/12/21   Page 1 of 18 PageID #: 28

# Exhibit B

(Immediately Follows This Page)

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2011051000489002002E0221

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 15 |
|---|---|

**Document ID:** 2011051000489002    **Document Date:** 05-03-2011    **Preparation Date:** 05-10-2011
**Document Type:** MORTGAGE
**Document Page Count:** 14

| PRESENTER: | RETURN TO: |
|---|---|
| INTRACOASTAL ABSTRACT CO., INC. | EDUL N. AHMAD |
| 31 STEWART STREET | 105-20 LIBERTY AVENUE |
| ML PICKUP USTA | RICHMOND HILL, NY  11419 |
| FLORAL PARK, NY  11001 | |
| 516-358-0505 | |
| 478-Q-01970 | |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9317 | 21 | Entire Lot | 110-19 ATLANTIC AVE |

Property Type:  COMMERCIAL REAL ESTATE

**CROSS REFERENCE DATA**

CRFN_____ _or_ Document ID_____ _or_ _____ Year____ Reel ___ Page ____ _or_ File Number_____

**PARTIES**

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| ATLANTIC 111ST LLC | EDUL N. AHMAD |
| 110-17 ATLANTIC AVENUE | 105-20 LIBERTY AVENUE |
| RICHMOND HILL, NY  11418 | RICHMOND HILL, NY  11419 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 2,000,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 2,000,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 10,000.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 22,500.00 | | $ | 0.00 |
| Spec (Additional): | $ | 5,000.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 6,000.00 | | | |
| NYCTA: | $ | 12,500.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 56,000.00 | | | |
| Recording Fee: | $ | 107.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed          05-26-2011 14:09
City Register File No.(CRFN):
                           2011000189750

*Jannette M Lffill*

*City Register Official Signature*

## PURCHASE MONEY MORTGAGE

MORTGAGE, dated May 3rd 2010, made by _Atlantic Hist LLC_ having an
address at _("Mortgagor")_, to EDUL N. AHMAD, having an address at 105-20 Liberty
Avenue, Richmond Hill, NY 11419 ("Mortgagee").

### Recital

Mortgagor is justly indebted to Mortgagee in the sum of Two Million Dollars
($2,000,000.00), which is evidenced by a Note of Mortgagor of even date herewith in said
principal amount (the "Note"). Mortgagor, in order to secure the payment of the Note, has
duly executed and delivered this Mortgage.

This Mortgage is a purchase money Mortgage given by Mortgagor to secure a
portion of the purchase price required to be paid by Mortgagor to Mortgagee in connection
with the sale of the Property hereinafter described.

### Definitions

Mortgagor and Mortgagee agree that, unless the context hereof otherwise
specifies or requires, the following terms shall have the meanings herein specified. Said
definitions shall be applicable equally to the singular and the plural forms of such terms.

"Chattels" shall mean all fixtures, fittings, appliances, apparatus, equipment,
machinery and articles of personal property and replacements thereof, now or
at any time hereafter affixed to, attached to, placed upon, or used in any way
in connection with the complete and comfortable use, enjoyment, occupancy
or operation of the Improvements on the Premises.

"Event of Default" shall mean any event and circumstance described as an
Event of Default in Section 2.01 hereof.

"Improvements" shall mean all structures or buildings now or hereafter located
upon the Premises or any part thereof, including all equipment, apparatus,
machinery and fixtures of every kind and nature whatsoever forming part of
said structures or buildings.

"Involuntary Rate" shall mean the lesser of fifteen percent per annum or the
maximum rate permitted by law.

"Property" shall mean the Premises, the Improvements, the Chattels and all
other property, rights and interests described in the Granting Clause of this
Mortgage.

"Premises" shall mean:

ALL that certain plot, piece or parcel of land, with the buildings
and improvements thereon erected, situate, lying and being in
The City of New York, the County of Queens and the State
of New York, being more particularly described in Exhibit A
attached hereto and made a part hereof.

TOGETHER with all right, title and interest, if any, of
Mortgagor in and to any streets and roads abutting the above
described premises to the center lines thereof,

TOGETHER with the appurtenances and all the estate and rights of Mortgagor in and to said premises.

Said premises is identified as          Block 9317 and Lot 21.

All terms in this Mortgage which are not defined above shall have the meanings set forth in this Mortgage.

<u>Granting Clause</u>

NOW, THEREFORE, in consideration of the premises, and in order to secure the payment of the principal, interest and any other sums payable under the Note and this Mortgage, and the observance and performance of the provisions hereof and of the Note, Mortgagor hereby mortgages to the Mortgagee all estate, right, title and interest of Mortgagor in, to and under any and all of the following described property (the "Property"), whether now owned or hereafter acquired:

(a) the Premises;

(b) the Improvements;

(c) the Chattels;

(d) all leases of the Premises, now or hereafter entered into and all right, title and interest of Mortgagor thereunder, the right, upon the happening of an Event of Default, to receive and collect the rents thereunder; and

(e) all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including without limitation insurance proceeds and condemnation awards.

## ARTICLE I

<u>Covenants of Mortgagor</u>

Mortgagor covenants and agrees as follows:

1.01.  Mortgagor shall punctually pay the principal, interest and all other sums to become due under the Note, at the time and place and in the manner specified in the Note, in the coin or currency of the United States of America which at the time of such payment shall be legal tender for the payment of public and private debts.

1.02.  Mortgagor represents and warrants that it has good and marketable title to the Premises; that the Premises are subject to no lien, claim or encumbrance except as set forth herein; that Mortgagor now and hereafter will own the Chattels free and clear of all liens, claims and encumbrances; and that this Mortgage is and will remain a valid and enforceable first lien on the Property subject only to the exceptions referred to herein; and that Mortgagor has full power and lawful authority to mortgage the Property as herein provided. Mortgagor forever shall preserve, warrant and defend such title to Mortgagee, and forever shall preserve, warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

1.03.  Mortgagor, at Mortgagor's sole cost and expense, shall do, execute, acknowledge and deliver all and every such further acts, deeds, mortgages, assignments, transfers and assurances as Mortgagee from time to time shall require, for the better assuring, mortgaging, assigning, transferring and confirming unto Mortgagee the property and rights

2

hereby mortgaged, assigned, transferred or intended now or hereafter to be mortgaged, assigned or transferred, or for carrying out the intention or facilitating the performance of the terms of this Mortgage, or for filing, registering or recording this Mortgage. All right, title and interest of Mortgagor in and to all extensions, improvements, betterments, renewals, substitutions and replacements of, and all additions and appurtenances to, the Premises, now owned by, hereafter acquired by, or released to Mortgagor, or constructed, assembled or placed by Mortgagor on the Premises, and all conversions of the security of this Mortgage, immediately upon such acquisition, release, construction, assembling, placement or conversion, without any further mortgage, conveyance, assignment or other act by Mortgagor, shall become subject to the lien of this Mortgage as fully and completely, and with the same effect, as though now owned by Mortgagor and specifically described in the granting clause hereof. Mortgagor, on demand, shall execute and deliver to Mortgagee any and all such further assurances, mortgages, conveyances or assignments thereof as Mortgagee may require for the purpose of expressly and specifically subjecting the same to the lien of this Mortgage. Mortgagor, upon the execution and delivery of this Mortgage, and thereafter on demand, at Mortgagor's sole cost and expense shall cause this Mortgage and any security instrument creating or evidencing a lien upon the Chattels or any other property to be secured hereby, and any other instrument of further assurance or instrument supplemental hereto or given in connection herewith, to be filed, registered or recorded in such manner and in such place or places as may be required by any present or future law in order to publish notice of and fully to protect the lien hereof upon, and the interest of Mortgagee in, the Property. On demand Mortgagor shall execute and deliver, and Mortgagor hereby authorizes Mortgagee, and irrevocably appoints Mortgagee as its attorney-in-fact, to execute and deliver in the name of and on behalf of Mortgagor, to the extent permitted by applicable law, one or more financial statements, chattel mortgages or comparable security instruments to evidence more effectively the lien hereof upon the Chattels.

1.04. Mortgagor shall keep the Property free from statutory liens of every kind or nature, and shall pay and discharge when due all taxes of every kind or nature, general and special assessments, levies, permits, inspection and license fees, water and sewer rents and charges, and other governmental or public charges, fines and impositions, whether of a like or different nature, which are or may be levied or imposed upon, or assessed against, the Property or any part thereof, or upon the revenues, income, rents, issues and profits of the Property or arising in respect of the occupancy, use or possession thereof. Mortgagor, upon the request of Mortgagee, shall deliver to Mortgagee receipts evidencing the payment of all such taxes, assessments, levies, fees, rents, charges, fines and impositions. ~~For purposes of this Mortgage, assessments which have been made payable in installments at the application of Mortgagor nevertheless shall be deemed due and payable in their entirety on the earlier of the day the first installment becomes due or payable or a lien.~~

~~1.05. Mortgagee, at the option of Mortgagee, to be exercised by ten days notice to Mortgagor, may require the deposit by Mortgagor, monthly or at the time of each payment of an installment of principal or interest under the Note, of additional amounts sufficient to pay and discharge thirty days prior to the date when due all taxes, assessments and other obligations under Section 1.04 above. The determination of the amounts to be deposited with Mortgagee, so that the aggregate of such deposits shall be sufficient to pay such obligations, shall be made by Mortgagee in its sole discretion. Such amounts shall be held by Mortgagee, without interest, and shall be applied to the payment of such obligations in respect to which such amounts were deposited or, at the option of Mortgagee, to the payment of said obligations in such order or priority as Mortgagee shall determine, when and as payable, provided Mortgagor is not in default hereunder. Mortgagor shall furnish to Mortgagee bills for all of the obligations for which deposits are to be made hereunder and such other documents and information as may be needed for the payment of such obligations, at least thirty days prior to the date on which such obligations first become payable. If thirty days prior to the due date of any of the aforesaid obligations the amounts then on deposit therefor shall be insufficient to pay and discharge such obligations in full, Mortgagor on demand shall deposit the amount of the deficiency with Mortgagee. In the event of any default by Mortgagor under any provision of this Mortgage, Mortgagee at Mortgagee's option may apply any amounts deposited pursuant to this Section 1.05 to the payment of principal, interest or other obligations secured hereby, in lieu of applying such amounts for the payment of the obligations for which such amounts were deposited.~~

3

Nothing herein contained shall be deemed to affect any other rights or remedies of Mortgagee under any other provisions of this Mortgage, or under any statute or rule of law, including without limitation the right to pay any such amount and to add the amount so paid, together with interest at the Involuntary Rate, to the indebtedness hereby secured. *IN THE EVENT OF A DEFAULT HEREUNDER WHICH IS NOT CURED AFTER APPLICABLE*

1.06. Mortgagor shall pay all filing, registration or recording fees; all federal, state, county and municipal taxes, duties, imposts, assessments and charges; and all expenses incident to the execution, acknowledgment, delivery and recording of this Mortgage, the Note, any security instrument with respect to the Chattels, any instrument of further assurance and any other instrument supplemental hereto or to be given in connection herewith. Mortgagor shall pay any and all taxes, charges, excises and levies imposed on Mortgagee by reason of the ownership or holding of this Mortgage or the Note, and pay all corporate stamp taxes and other taxes required to be paid on this Mortgage or the Note. If Mortgagor fails to make any such payment within five days after demand, Mortgagee in addition to its other rights and remedies, may pay the amount due, and Mortgagor on demand shall reimburse Mortgagee for said amount, together with interest thereon at the Involuntary Rate from the date of such advance to the date of reimbursement. The amount so advanced by Mortgagee and such interest shall be a part of the indebtedness secured by this Mortgage. In the event of the passage of any law deducting from the value of the Premises, for purposes of taxation, the amount of any lien thereon or changing in any way the laws for the taxation of Mortgages or debts secured by Mortgages or the manner of the collection of any such taxes, so as to effect this Mortgage; then the indebtedness secured hereby, at the option of Mortgagee and upon thirty days notice to Mortgagor, immediately shall become due and payable, provided, however, that said option shall be unavailing and the Note and this Mortgage shall remain in effect if, without violating such law or any applicable usury or other law, Mortgagor lawfully pays when due such taxes, including any interest or penalties thereon, to or for Mortgagee.

1.07. Mortgagor shall pay, from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers and others which, if unpaid, might result in, or permit the creation of, a lien on the Property or any part thereof, or on the revenues, income, rents, issues and profits arising therefrom. Mortgagor shall do or cause to be done everything necessary so that the lien hereof shall be fully preserved, at the cost of Mortgagor, without expense to Mortgagee.

1.08. Mortgagor shall not be required to pay the obligations imposed upon Mortgagor by Sections 1.04, 1.06 or 1.07 hereof so long as Mortgagor, in good faith and at its own expense, shall contest the validity or amount of such obligation by appropriate legal proceedings, provided such proceedings shall prevent the collection thereof or other realization thereon and shall not result in the sale or forfeiture of the Property or any part thereof to satisfy the same. During any such contest Mortgagor, at the option of Mortgagee, shall provide security satisfactory to Mortgagee assuring the discharge of Mortgagor's obligations hereunder and of any additional charge, penalty or expense arising from or incurred as a result of such contest. If at any time the payment of any obligation imposed upon Mortgagor under Section 1.04 shall become necessary to prevent the delivery of a tax deed conveying the Premises or any portion thereof because of nonpayment, then Mortgagor shall pay such obligation in sufficient time to prevent the delivery of such tax deed.

1.09. Mortgagor shall keep the Improvements and Chattels insured for the benefit of Mortgagee against loss by fire, casualty and such other hazards as may be specified by Mortgagee. Mortgagor shall maintain war risk insurance, if obtainable. All insurance to be maintained by Mortgagor hereunder shall be written in forms, amounts and by companies *reasonably* satisfactory to Mortgagee, naming Mortgagee as insured. Mortgagor shall pay when due all premiums for such insurance. The policy or policies of such insurance, and renewals thereof, shall be delivered to Mortgagee, and shall have attached thereto a standard noncontributing mortgagee endorsement in favor of and entitling Mortgagee to collect any and all proceeds payable under all such insurance, as well as a standard waiver of subrogation endorsement, and shall contain provisions for ten days notice to Mortgagee prior to any cancellation thereof, all in form and substance satisfactory to Mortgagee. Mortgagor shall reimburse Mortgagee on demand for any premiums for insurance paid by Mortgagee, together with interest at the Involuntary Rate, on Mortgagor's default in maintaining any insurance

\* the form + amounts shall be similar to other buildings in the area⁴  JS

required hereunder or in delivering the insurance policies to Mortgagee as provided herein. Mortgagor shall give Mortgagee prompt notice of any loss covered by such insurance. Mortgagee is hereby authorized to collect, adjust and compromise all losses covered by such insurance. Mortgagor shall have the right to join Mortgagee in adjusting any loss not in excess of $10,000. Any moneys received as payment for any loss under any such insurance shall be paid over to Mortgagee to be applied, at the option of Mortgagee, either to the prepayment of the Note, without premium, or to the reimbursement of Mortgagor for expenses incurred by it in the restoration of the Improvements. Mortgagor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder, unless such insurance names Mortgagee as insured, with any and all proceeds payable to Mortgagee under a standard mortgage endorsement of the character above described. Mortgagor promptly shall deliver to Mortgagee the policy or policies of such insurance.

1.10 Mortgagor shall keep adequate records and books of account in accordance with generally accepted accounting principles and shall permit Mortgagee, and the agents, accountants and attorneys of Mortgagee, to visit and inspect the Premises and examine the records, books of account and papers of Mortgagor which reflect upon its financial condition, the income and expenses of the Property or the business conducted thereat, and to discuss the affairs, finances and accounts of Mortgagor with the officers, agents, accountants and attorneys of Mortgagor, at such reasonable times as Mortgagee may request. Mortgagor shall deliver to Mortgagee promptly after the close of each fiscal year of Mortgagor a balance sheet of Mortgagor as of the end of such fiscal year, and a statement of profit and loss of Mortgagor for such fiscal year, prepared in accordance with generally accepted accounting principles and certified by a certified public accountant satisfactory to Mortgagee. In addition, Mortgagor from time to time, within fifteen days after request by Mortgagee, shall furnish balance sheets and statements of profit and loss as of such other dates and for such other periods as Mortgagee may request, certified by the principal financial officer of Mortgagor. Mortgagor promptly shall deliver to Mortgagee such other information with respect to Mortgagor and the Property as Mortgagee from time to time reasonably may request.

1.11. Mortgagor shall not commit, suffer or permit any waste on or to the Property. Mortgagor at all times shall maintain the Improvements in good operating order and condition, and promptly shall make all repairs, renewals, replacements, additions and improvements in connection therewith which are necessary or desirable to such end. The Improvements shall not be removed, demolished or altered without the prior written consent of Mortgagee in each instance. None of the Chattels shall be removed without the prior written consent of Mortgagee in each instance, except where appropriate replacements free of superior title, liens, claims and encumbrances are immediately made having a value at least equal to the value of the Chattels removed. Mortgagor shall not make any change in the use of the Property which will in any way increase the risk of damage to the Property by fire or other hazard.

1.12. Mortgagor shall not permit the release, storage, spilling or deposit on the Premises of any hazardous substance, and shall not permit the use of the Premises in violation of any applicable environmental law. As used herein, a hazardous substance shall mean any substance listed as hazardous or toxic in the regulations implementing the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. Section 9601 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq., or other applicable environmental law.

1.13. Mortgagor shall not sell, transfer, assign or convey the Property or any part thereof or any interest therein, or enter into a lease of all or substantially all of the Property, without the prior written consent of Mortgagee in each instance. A sale or other transfer of majority or controlling interest in any stock of Mortgagor, unless Mortgagor is a publicly held corporation, shall constitute a sale within the meaning of this Section 1.13. Mortgagor shall not further mortgage, pledge or otherwise encumber the Property or any part thereof or any interest therein without the prior written consent of Mortgagee in each instance.

1.14.  All awards and compensation payable to Mortgagor as a result of any condemnation or other taking, or of any purchase in lieu thereof, of all or any portion of the Premises, are hereby assigned to and shall be paid to Mortgagee.  Mortgagor hereby authorizes Mortgagee to collect and receive such awards and compensation, to give proper receipts and acquittances therefor, and to apply the same to the indebtedness evidenced by the Note, notwithstanding that such indebtedness may not then be due and payable.  If any portion of such awards or compensation shall be applied to reduce the indebtedness evidenced by the Note, the same shall be applied to the then unpaid installments of principal under the Note in the inverse order of their maturity, so that the regular payments under the Note shall not be reduced or altered in any manner.  Mortgagee shall be under no obligation to question the amount of any such award or compensation, and may accept the same in the amount in which the same shall be paid.  Mortgagor, immediately upon obtaining knowledge of the institution of any proceedings for the condemnation or taking of the Premises or any portion thereof, shall notify Mortgagee of the pendency of such proceedings.  Mortgagee may participate in any such proceedings and Mortgagor from time to time shall deliver to Mortgagee all instruments requested by Mortgagee to permit such participation.  Mortgagor, upon request by Mortgagee, shall execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid awards and compensation to Mortgagee free and clear of all liens, claims or encumbrances.  Mortgagee shall not be limited to the interest paid on any award or compensation, but shall be entitled to the payment of interest by Mortgagor at the applicable rate provided in the Note and herein.

1.15.  Mortgagor shall pay all costs and expenses, including reasonable attorneys' fees, incurred by Mortgagee in connection with the enforcement of this Mortgage or the Note, the curing of any default by Mortgagor thereunder, or the defense or asserting of any rights, remedies or claims of Mortgagee in respect thereof, by litigation or otherwise.  If any action or proceeding is commenced to which Mortgagee is made a party or in which, in the judgment of Mortgagee, it is necessary to defend the lien of this Mortgage or to protect the Property, Mortgagee may appear in such action or proceeding, in the name of Mortgagor or otherwise.  Mortgagor shall pay to Mortgagee on demand all costs and expenses, including reasonable attorneys' fees, incurred by Mortgagee in connection with any such action or proceeding, and such costs and expenses shall be a part of the indebtedness secured by this Mortgage.

1.16.  If Mortgagor shall fail to pay or perform any term, covenant or condition of this Mortgage, including without limitation the provisions of Sections 1.04, 1.06 and 1.07 hereof, Mortgagee may make advances to pay or perform the same on behalf of Mortgagor.  All sums so advanced shall be paid by Mortgagor to Mortgagee on demand with interest from the date of such advance at the Involuntary Rate, and shall be a lien upon the Property secured by this Mortgage.  If any payment due hereunder or under the Note is not paid when due, then Mortgagor shall pay on demand interest thereon at the Involuntary Rate from the date the payment was due until paid, whether or not any action has been taken or proceeding commenced to recover the amount due or to foreclose this Mortgage.  In addition, Mortgagor shall pay a late payment premium of 10 percent of any principal or interest payment made more than ten (10) days after the due date thereof, which premium shall be paid with such late payment.  All unpaid and accrued interest and said late payment premium shall be a part of the indebtedness secured hereby.  The provisions of this Section 1.16 shall not prevent any default in the payment, observance or performance of any term, covenant or condition of this Mortgage from constituting an Event of Default, and shall not be deemed to extend or otherwise modify or amend the date when any payments are due hereunder.

1.17.  Mortgagor, within five days after request therefor by Mortgagee, shall furnish a written statement, certified and duly acknowledged by Mortgagor, setting forth the amount due on this Mortgage, the terms of payment and the maturity date of the Note, the date to which interest has been paid, and whether any offsets or defenses exist against any of the indebtedness secured hereby.  If any offset or defense is alleged to exist, the nature thereof shall be set forth in detail in said statement.

1.18.  Mortgagor, in compliance with Section 13 of the Lien Law, will receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the payment of the cost of the improvement and will apply the same

6

first to the payment of the cost of the improvement before using any part thereof for any
other purpose.

## ARTICLE II

### Events of Default and Remedies

2.01.  The whole of the principal indebtedness evidenced by the Note and all
accrued interest immediately shall become due and payable, at the option of Mortgagee or the
heirs, executors, administrators, legal representatives, successors or assigns of Mortgagee,
upon the happening of any one or more of the following Events of Default:

(a)  If default shall be made in the payment of any principal or interest to be
paid under the Note, when and as the same shall become due and payable, or if
default shall be made, and shall have continued for a period of ten (10) days, in
the payment of any other amount due under the Note or this Mortgage, when
and as the same shall become due and payable as in the Note or this Mortgage
provided; or

(b)  If default shall be made in the due observance or performance of any term,
covenant or condition on the part of Mortgagor contained in Sections 1.02, 1.03,
1.04, 1.06, 1.07 or 1.09 of this Mortgage, and such default shall have continued
for a period of ten (10) days after written notice thereof shall have been given
by Mortgagee to Mortgagor; or

(c)  If Mortgagor sells, transfers, assigns or conveys the Premises or any part
thereof or any interest therein, or enters into a lease of all or substantially all
of the Premises, without the prior written consent of Mortgagee; or Mortgagor
further mortgages, pledges or otherwise encumbers the Premises or any part
thereof or any interest therein, without the prior written consent of
Mortgagee; or

(d)  If default shall be made in the due payment, observance or performance of
any other term, covenant or condition on the part of Mortgagor in the Note or
in this Mortgage contained, and such default shall have continued for a period
of thirty (30) days after written notice thereof shall have been given by
Mortgagee to Mortgagor, or if any representation made by Mortgagor in this
Mortgage shall be incorrect; or

(e)  If final judgment for the payment of money shall be rendered against
Mortgagor and Mortgagor shall not cause the same to be discharged within
sixty days from the entry thereof, or shall not appeal therefrom or from the
order, decree or process upon which or pursuant to which said judgment was
granted and secure a stay of execution thereof pending such appeal; or

(f)  If Mortgagor shall file or consents to the filing of a petition in bankruptcy,
or commences or consents to the commencement of any proceeding pursuant
to the federal Bankruptcy Act or any similar federal or state law, now or
hereafter in effect, relating to the reorganization of Mortgagor or the
arrangement or readjustment of the debts of Mortgagor; or if a petition in
bankruptcy, insolvency proceeding or petition for reorganization shall be filed
against Mortgagor and is not withdrawn or dismissed within sixty days; or if,
by decree of a court of competent jurisdiction, Mortgagor shall be adjudicated a
bankrupt or be declared insolvent, or a petition for the reorganization of
Mortgagor is granted; or if Mortgagor shall make an assignment for the benefit
of creditors, or shall admit in writing its inability to pay its debts generally as
they become due; or if Mortgagor shall consent to the appointment of a
receiver, liquidator or trustee of Mortgagor or of all or any part of Mortgagor's
property; or if, by the order of a court of competent jurisdiction, a receiver,
liquidator or trustee of the Property or any part thereof, or of Mortgagor or

7

any of Mortgagor's property, shall be appointed and such order shall not be discharged or dismissed within sixty days after such appointment; or if there is an attachment or sequestration of any of the property of Mortgagor and the same is not discharged or bonded in full within ten days.

2.02.  Upon the occurrence of any such Event of Default, Mortgagee, personally or by its agents, employees, nominees or attorneys, at the expense of Mortgagor may:  (a) enter into and upon the Property, and each and every part thereof, and may dispossess and exclude Mortgagor and its agents and servants therefrom; (b) use, operate, manage, control, insure, maintain, restore and otherwise deal with the Property and conduct the business thereat; (c) make all necessary or proper repairs, renewals and replacements and such useful alterations, additions, betterments and improvements thereto and thereon as Mortgagee may deem advisable; and (d) exercise all rights and powers of Mortgagor with respect to the Property, in the name of Mortgagor or otherwise.

2.03.  Upon the occurrence of any such Event of Default, Mortgagee shall be entitled to collect and receive all earnings, revenues, income, rents, issues and profits of the Property and every part thereof.  After deducting the costs and expenses of conducting the operations and business at the Property, and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements, and amounts necessary to pay for taxes, assessments, insurance and any other proper charges upon the Property or any part thereof, and just and reasonable compensation for the services of Mortgagee and for all agents, nominees, attorneys and other employees by it properly engaged and employed; then Mortgagee shall apply the moneys arising as aforesaid, first, to the payment of the principal of the Note and the interest thereon, when and as the same shall become payable and, second, to the payment of any other sums required to be paid by Mortgagor under this Mortgage or the Note.

2.04.  Upon the occurrence of any such Event of Default, Mortgagee, with or without entry, personally or by the agents, employees, nominees or attorneys of Mortgagee, may:

(a)  sell the Property or any part thereof pursuant to any procedures provided by applicable law, including without limitation the procedures set forth in Article 14 of the New York Real Property Actions and Proceedings Law (and any amendments or substitute statutes in regard thereto), and all estate, right, title, interest, claim and demand therein, and right of redemption thereof, as one parcel or in parcels, pursuant to the procedures provided by law, at one or more sale or sales, at such time and place upon such terms and after such notice thereof as may be required or permitted by law; and/or

(b)  institute proceedings for the complete or partial foreclosure of this Mortgage; and/or

(c)  take such steps to protect and enforce its rights whether by suit, action or proceeding in equity or at law for the specific performance of any term, covenant or condition in the Note or in this Mortgage, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Mortgagee shall elect.

2.05.  Mortgagor, for itself and all who may claim under it, hereby waives, to the extent that it lawfully may, all right to have the Property marshaled upon any foreclosure hereof, and waives trial by jury and the right to impose any ~~defense~~ setoff or counterclaim to any action brought by the holder of this Mortgage to enforce its rights hereunder.  After the happening of any Event of Default, and immediately upon the commencement of any suit, action or proceeding by Mortgagee to obtain judgment for the principal of, or interest on, the Note and other sums required to be paid by Mortgagor pursuant to any provisions of the Note or this Mortgage, or of any other nature in aid of the enforcement of the Note or this Mortgage, Mortgagor ~~(a) shall waive the issuance and service of process and enter its~~ voluntary appearance in such suit, action or proceeding, and ~~(b)~~ if required by Mortgagee,

8

shall consent to the appointment of a receiver or receivers of the Property and of all the earnings, revenues, income, rents, issues and profits thereof. After the happening of any Event of Default, or upon the commencement of any proceedings to foreclose this Mortgage or to enforce the specific performance hereof or in aid thereof, or upon the commencement of any other judicial proceeding to enforce any right of Mortgagee, Mortgagee shall be entitled, as matter of right, without the giving of notice to any other party and without regard to the adequacy or inadequacy of any security for the Mortgage indebtedness or the solvency or insolvency of Mortgagor, forthwith either before or after declaring the unpaid principal of the Note to be due and payable, to the appointment of a receiver or receivers of the Property and of all the earnings, revenues, income rents, issues and profits thereof. Mortgagee may be appointed as such receiver. Notwithstanding the appointment of any receiver, liquidator or trustee of Mortgagor, or of any of its property, or of the Property or any part thereof, Mortgagee shall be entitled to retain possession and control of all property now or hereafter held under this Mortgage. During the continuance of any Event of Default and pending the exercise by Mortgagee of the right to exclude Mortgagor from any and all part of the Property, Mortgagor agrees to pay the fair and reasonable rental value for the use and occupancy of the Property or any portion thereof which are in its possession for such period and, upon default of any such payment, shall vacate and surrender possession of the Property to Mortgagee or to a receiver, if any, and in default thereof may be evicted by any summary action or proceeding for the recovery or possession of premises for nonpayment of rent, however designated. Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement, at the time and place appointed for such sale or any adjournment thereof, of the new time and place of the adjourned sale or sales. Except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned. *after applicable notice & cure period

2:06. Upon the completion of any sale or sales made by Mortgagee under or by virtue of this Article II, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Mortgagor hereby irrevocably appoints Mortgagee the true and lawful attorney of Mortgagor, in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Property and rights so sold. Mortgagee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power. Mortgagor hereby ratifies and confirms all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, Mortgagor, if so requested by Mortgagee, shall ratify and confirm any such sale or sales by executing and delivering to Mortgagee or to such purchaser or purchasers all such instruments as may be advisable, in the judgment of Mortgagee, for the purpose as may be designated in such request. Any such sale or sales made under or by virtue of this Article II, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming through or under Mortgagor.

2.07. The purchase money, proceeds or avails of any sale made under or by virtue of this Article II, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this Article II or otherwise, shall be applied as follows:

First, to the payment of the costs and expenses of such sale, including reasonable compensation to Mortgagee, and the agents and counsel of Mortgagee, and of any judicial proceedings wherein the same may be made, and of all expenses, liabilities and advances made or incurred by Mortgagee under this Mortgage, together with interest thereon at the Involuntary Rate, and all taxes or assessments, other than those subject to which the Property shall have been sold.

9

Second, to the payment of the whole amount then due, owing or unpaid upon the Note for principal or interest, with interest on the unpaid principal at the Involuntary Rate from and after the happening of any Event of Default.

Third, to the payment of any other sums required to be paid by Mortgagor pursuant to any provisions of this Mortgage or of the Note, including all expenses, liabilities and advances made or incurred by Mortgagee under this Mortgage or in connection with the enforcement thereof, together with interest thereon at the Involuntary Rate.

Fourth, to the payment of the surplus, if any, to whosoever may be lawfully entitled to receive the same.

2.08. Upon any sale made under or by virtue of this Article II, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Property or any part thereof. In lieu of paying cash for the Property may make settlement for the purchase price for the Property by crediting the indebtedness secured by this Mortgage against the net purchase price, after deducting therefrom the expenses of the sale and the costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage. In the event of any such sale, the entire principal of, and interest on, the Note, if not previously due and payable, and all other sums required to be paid by Mortgagor pursuant to this Mortgage, immediately shall become due and payable. Upon the occurrence of any Event of Default, Mortgagor shall pay to Mortgagee interest at the Involuntary Rate on the then unpaid principal of the Note, and all other sums required to be paid by Mortgagor pursuant to any provisions of this Mortgage, and such further amount as shall be sufficient to cover the costs and expenses of collection, including reasonable compensation to Mortgagee, and the agents and counsel of Mortgagee, and any other costs or expenses incurred by Mortgagee hereunder. In any action or proceeding to foreclose this Mortgage or sell the Property, counsel fees in an amount ~~equal to 10 percent of the unpaid balance, but not~~  ~~less than $10,000.00,~~ together with all costs and disbursements, are to be borne by Mortgagor, and the same shall be included in any judgment of foreclosure and sale that may be entered and shall be a lien on the premises secured by this Mortgage. In the event Mortgagor shall fail forthwith to pay such amounts on demand, Mortgagee shall be entitled and empowered to institute such action or proceeding at law or in equity for the collection of the sums so due and unpaid, and may prosecute any such action or proceeding to judgment or final decree, and may enforce any such judgment or final decree against Mortgagor and collect out of the property of Mortgagor wherever situated, as well as out of the Property, in any manner provided by law, moneys adjudged or decreed to be payable. Mortgagee shall be entitled to recover judgment as aforesaid either before or after or during the pendency of any proceedings for the enforcement of the provisions of this Mortgage; and the right of Mortgagee to recover such judgment shall not be affected by any entry or sale hereunder, or by the exercise of any other right, power or remedy for the enforcement of the provisions of this Mortgage, or the foreclosure of the lien hereof. In the event of a sale of the Property, and of the application of the proceeds of sale, as in this Mortgage provided, to the payment of the debt hereby secured, Mortgagee shall be entitled to enforce payment of, and to receive all amounts then remaining due and unpaid upon, the Note, and to enforce payment of all other charges, payments and costs due under this Mortgage, and shall be entitled to recover judgment for any portion of the debt remaining unpaid, with interest at the Involuntary Rate. No recovery of any judgment by Mortgagee and no levy of any execution under any judgment upon the Property or upon any other property of Mortgagor shall affect in any manner or to any extent, the lien of this Mortgage upon the Property or any part thereof, of any liens, rights, powers or remedies of Mortgagee hereunder, and such liens, rights, powers, or remedies shall continue unimpaired as before.

2.09. No right or remedy herein conferred upon or reserved to Mortgagee is intended to be exclusive of any other rights or remedies. All rights and remedies of Mortgagee shall be cumulative, may be exercised singly or concurrently, and shall be in addition to every other right or remedy given hereunder or now or hereafter existing at law or in equity or by statute. No delay or omission of Mortgagee to exercise any right or remedy under this Mortgage shall impair any such right or remedy or shall be construed to be

10

a waiver of any Event of Default or any acquiescence therein. Every right, remedy and power given by this Mortgage to Mortgagee may be exercised from time to time as often as may be deemed expedient by Mortgagee. No waiver by Mortgagee shall be effective unless in writing and then only to the extent specifically stated. Without limiting the generality of the foregoing, any payment by Mortgagee for insurance premiums, real estate taxes, assessments, water charges or sewer rents or other charges affecting the Premises, or payments made in connection with any lien superior to the lien of this Mortgage, shall not constitute a waiver of any default by Mortgagor in making such payments and shall not obligate Mortgagee to make any such payments thereafter. No waiver of any right or remedy hereunder shall be deemed to be a waiver of such right or remedy as to any subsequent default hereunder.

2.10. Mortgagor shall not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, or any exemption from execution or sale of the Property or any part thereof, any law now or hereafter in force providing for the valuation or appraisal of the Property, or any part thereof, prior to any sale or sales thereof, wherever enacted and whether now or at any time hereafter in force, which may affect the covenants and terms of performance of this Mortgage. Mortgagor, after any such sale or sales, shall not claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof. Mortgagor hereby expressly waives, to the extent permitted by law, all benefit or advantage of any and all such law or laws. Mortgagor covenants not to hinder, delay or impede the execution of any power herein granted or delegated to Mortgagee, and agrees to suffer and permit the execution of every power and right herein or by law provided to Mortgagee as though no such law or laws had been made or enacted.

### ARTICLE III

#### Miscellaneous

3.01. Mortgagor shall have the right to prepay the indebtedness evidenced by the Note, in whole or in part, without penalty, upon ten days prior written notice to Mortgagee. The installment payments provided for in the Note shall continue without change after any such prepayment.

3.02. This Mortgage shall be construed in accordance with the laws of the State of New York. Whenever possible, each provision of this Mortgage shall be interpreted in such manner as to be effective and valid under applicable law. This Mortgage shall be construed so as to afford to Mortgagee rights in addition to and not exclusive of the rights conferred by Sections 254, 271 and 272 of the Real Property Law of the State of New York or any other applicable law. In the event any one or more of the provisions of this Mortgage or in the Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability, at the option of Mortgagee, shall not affect any other provision of this Mortgage, and this Mortgage shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein to the extent of such invalidity, illegality or unenforceability. No provision of this Mortgage or the Note shall require or be construed as requiring the payment of, or permit the collection of, interest in excess of the maximum amount permitted by applicable law. Mortgagor shall not be obligated to pay any interest in excess of such maximum amount. Mortgagor acknowledges that it has received a true copy of the Note and this Mortgage.

3.03. All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when presented personally or sent by Federal Express courier or registered or certified mail, return receipt requested, with postage prepaid, to any party hereto at its address above stated. Any party hereto may change the address to which notices are to be mailed by notice given in accordance with this Section 3.03.

3.04. This Mortgage cannot be modified or discharged orally and no agreement shall be effective to modify or discharge this Mortgage in whole or in part unless

it is in writing and signed by the party against which enforcement of the modification or discharge is sought.

3.05.   All of the terms, covenants and conditions of this Mortgage shall run with the land and shall apply to, bind and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns.

IN WITNESS WHEREOF, this Mortgage has been duly executed by Mortgagor on the date first above written.

Atlantic 14th LLC

By:

JARNAIL SINGH, Member

12

STATE OF NEW YORK, COUNTY OF QUEENS, ss.

On the 3rd day of May, 2010, before me, the undersigned notary public, personally appeared JARNAIL SINGH, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public
My commission expires on

ILENE GERSTEIN
Notary Public, State of New York
No. 01GE4920790
Qualified in Nassau County
Commission Expires February 16, 2009

SEAL

**Schedule A Description**

Title Number 615-874Q                                          Page   1

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the westerly side of 111th Street and the northerly side of Atlantic Avenue;

RUNNING THENCE northerly along the westerly side of 111th Street, 124.26 feet;

THENCE westerly at right angles to the westerly side of 111th Street, 100.11 feet;

THENCE southerly at right angles to the last described course, 25.02 feet;

THENCE westerly at right angles to the last described course, 20.02 feet;

THENCE southerly at right angles to the last described course, 98.36 feet to the northerly side of Atlantic Avenue;

THENCE easterly along the northerly side of Atlantic Avenue, 120.13 feet to the corner aforesaid, the point or place of BEGINNING.

*110-19 Atlantic Ave*

1.____ The attached mortgage covers real property improved or to be improved by a one or two family dwelling.

2.____ The attached mortgage covers real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having their own separate cooking facilities.

3._X_ The attached mortgage does not cover real property improved as described above

N.Y. Statutory Short Form Power of Attorney
Effective 09/12/2010

**Judicial Title**

State of New York
County of            ss.:

On the        day of        in the year        before me, the undersigned, personally appeared
         , personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their
signature(s) on the instrument, the individual(s), or the person upon behalf of which the
individual(s) acted, executed the instrument.

_____
Signature and Office of individual taking acknowledgment

State of New York
County of            ss.:

On the        day of        in the year        before me, the undersigned, personally appeared
         , personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their
signature(s) on the instrument, the individual(s), or the person upon behalf of which the
individual(s) acted, executed the instrument.

_____
Signature and Office of individual taking acknowledgment

RETURN BY MAIL TO: